## COMMISSIONER OF INTERNAL REVENUE v. BLAIR.

### No. 4509.

Circuit Court of Appeals, Seventh Circuit.
June 23, 1932.

Rehearing Denied Oct. 3, 1932.

Before ALSCHULER, EVANS, and SPARKS, Circuit Judges.

G. A. Youngquist, Asst. Atty. Gen., A. H. Conner and Wm. Cutler Thompson, Sp. Assts. to the Atty. Gen. (C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Prew Savoy, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for petitioner.

J. F. Dammann, Stuart J. Templeton, and Calvin F. Selfridge, all of Chicago, Ill. (Wilson & McIlvaine, of Chicago, Ill., of counsel), for respondent Edward T. Blair.

SPARKS, Circuit Judge (after stating the facts as above).

The statutes involved in this appeal are Revenue Act of 1921, c. 136, 42 Stat. 227,

233, 246, §§ 210, 211 (a) (1), 219 (a) (3, 4), and so much thereof as is applicable is set forth in the margin.[1]

The only question presented for our determination is whether the law will permit the trust income devised to respondent by his father's will to be assigned by him prior to his actual receipt of it. If this question be answered in the affirmative, the ruling of the Board is correct; if it be answered in the negative, respondent is properly chargeable with the taxes assessed, and the cause must be reversed.

The citizenship of respondent and testator, the location of the trust property, and the creation and administration of the trust all being in Illinois, we are required to be guided by the laws of that state in determining the question presented. Spindle, Assignee, v. Shreve, 111 U. S. 542, 4 S. Ct. 522, 28 L. Ed. 512.

In Merchants' Loan & Trust Co. v. Patterson, 308 Ill. 519, 139 N. E. 912, 916, the court said: "In a court of law the legal estate of the trustee, as a general rule, has the same properties, characteristics and incidents as if the trustee were the absolute, beneficial owner, and he may so deal with it. In equity, on the other hand, the cestui que trust may deal with his equitable estate as property. He is the beneficial and substantial owner, and if under no disability may sell and dispose of his estate, and any legal conveyance will have the same operation upon the equitable estate as a similar conveyance of the legal estate would have at law upon the legal estate. 1 Perry on Trusts, § 321. It is a fundamental proposition that equitable estates are governed by the same rule as legal estates * * * In the consideration of a court of equity the cestui que trust is actually seized of the freehold. He may alien it, and any legal conveyance by him will have the same operation in equity upon the trust estate as it would have had at law upon the legal estate."

This principle was also recognized and approved in Bryan v. Howland, 98 Ill. 625, Binns v. La Forge, 191 Ill. 598, 61 N. E. 382, Young v. Gnichtel, Collector (D. C., 3d Cir.) 28 F.(2d) 789, and O'Malley-Keyes v. Eaton, Collector (D. C., 2d Cir.) 24 F.(2d) 436; but in none of the cases hereinbefore referred to were there any restrictions against alienation by the assignee, nor was there attempt to protect the trust fund or the income therefrom against liability for assignee's debts or obligations.

As a general rule, the creator of a trust which forms the basis of an annuity may restrict annuitant from alienating the annuity, and may protect it in the hands of the trustee against liability for annuitant's debts. Spindle v. Shreve, supra; Nichols, Assignee, v. Eaton, 91 U. S. 716, 23 L. Ed. 254; Congress Hotel Co. v. Martin, 312 Ill. 318, 143 N. E. 838, 33 A. L. R. 562; Steib v. Whitehead, 111 Ill. 247. In each case cited in this paragraph the instrument which defined the trust contained an express restriction as to alienation or its equivalent. Indeed, it has been quite generally believed that there must be a clear and express restriction in order to prevent the owner of an equitable estate from alienating it, if he so desires.

It is respondent's contention that in testator's will there is no clear and express restriction against alienation of respondent's income from the trust therein established. On the other hand, the Commissioner contends that under the more recent decisions of Illinois there are sufficient restrictions in the instant will to prevent alienation, and that the trust thereby created is a spendthrift trust.

There is no doubt that the courts of Illinois have gone further than many other American courts in upholding limitations as to alienation of equitable estates, and no courts have been more liberal in recognizing spendthrift trusts than have they.

In Bennett v. Bennett, 217 Ill. 434, 75 N. E. 339, 341, 4 L. R. A. (N. S.) 470, the question at issue was whether a legacy in trust until the legatee should arrive at forty years of age could be required to be paid to him before he reached that age. The fact that there was a gift over if the legatee died under forty apparently settled the question in the negative. The court, however, was of the opinion that the legacy was contingent in the sense of being subject to a condition precedent that legatee survive the age of

---

[1] Revenue Act of 1921, c. 136, 42 Stat. 227, 233, 246:

"Sec. 210. That * * * there shall be levied, collected, and paid for each taxable year upon the net income of every individual a normal tax * * *.

"Sec. 211. (a) That * * * in addition to the normal tax imposed by section 210 of this Act, there shall be levied, collected, and paid for each taxable year upon the net income of every individual—

"(1) * * * A surtax * * *

"Sec. 219. (a) That the tax imposed by sections 210 and 211 shall apply to the income of estates or of any kind of property held in trust, including—
* * *

"(3) Income held for future distribution under the terms of the will or trust; and

"(4) Income which is to be distributed to the beneficiaries periodically, whether or not at regular intervals, and the income collected by a guardian of an infant to be held or distributed as the court may direct."

forty, and held that the testator had expressed the spendthrift purpose. The court said: " 'It is not necessary that an instrument creating a spendthrift trust should contain an expressed declaration that the interest of the cestui que trust in the trust estate shall be beyond the reach of his creditors, provided such appears to be the clear intention of the testator or donor as gathered from all parts of the instrument construed together in the light of the circumstances.' * * * The fact that a trustee was appointed and vested with the estate and the beneficiary was given the income only is a circumstance from which the intention of the testator to create a spendthrift trust may be inferred."

In Wagner v. Wagner, 244 Ill. 101, 91 N. E. 66, 70, 18 Ann. Cas. 490, the question was whether the cestui, who was of age, could terminate the trusteeship of his absolute and indefeasible equitable interest before the time fixed by the testator, and the court held that the cestui could not so terminate it. There were no express restraints on alienation, and yet the court held that it was a spendthrift trust and, in so holding it, said: "To create a valid spendthrift trust it is not necessary that the cestui que trust should be denominated a spendthrift in the will or that the testator should give his reasons for the creation of it. Nor is it necessary that the will shall in express terms contain all the restrictions and qualifications incident to such trusts. If, upon a consideration of the will, it appears the intention of the testator was to create such a trust, effect will be given to that intention."

Quoting from 26 Am. & Eng. Ency. of Law (2 Ed.) 138, the court said: " 'Spendthrift trust is the term commonly applied to those trusts that are created with a view of providing a fund for the maintenance of another and at the same time securing it against his own improvidence or incapacity, for self-protection. The provisions against alienation of the trust fund by the voluntary act of the beneficiary, or in invitum by his creditors, are the usual incidents of such trusts.' "

In Wallace v. Foxwell, 250 Ill. 616, 95 N. E. 985, 986, 50 L. R. A. (N. S.) 632, the language of the will was "to pay over to my son, Howard * * * and to his wife * * * one-half of the net income of my estate in such proportions as they may see fit, paying more or less to the one or the other, as they may deem best, during the lifetime of my son * * * and upon the decease of my said son * * * to convey one-half of my estate to the right heirs of my son." There

was no express restraint on alienation, but the court held that it was a spendthrift trust, and said: "Considering, in connection with the will, the financial condition of Howard, which was known to his father, and the fact that Howard was a married man twenty-nine years old and then had one child, we find reasons why the testator might have desired to conserve the property by placing it beyond the reach of Howard's creditors and leaving it so his family might receive the income from it."

In Hopkinson v. Swaim, 284 Ill. 11, 119 N. E. 985, 988, the income from the trust was to be paid to three daughters during their lives, and as and after each respectively should arrive at twenty-one years of age the trustees were ordered to pay her part to her directly, free and exempt from the power and control of any husband and from liabilities for any debts or engagements. The court, in holding that a spendthrift trust was thereby created, said: "While the will does not expressly state that the income shall not be subject to alienation by the beneficiary it does state that the income shall be paid to each one directly, which means without the intervention of any medium, agent, or go-between, and not only for her separate use and benefit, free and exempt from the power and control of her husband, but also from liabilities for any debts or engagements. There could be no such exemption from liability for debt if the beneficiary could convey or assign the income, for if she could do so it could also be seized in execution or attachment or reached by a creditor's bill. The intention of the testator determines the construction of the will, and it is not necessary that a restriction upon alienation shall appear in express terms if the intention is clearly to be gathered from the instrument. * * * It was clearly the testator's intention that his daughters should not have the power to alienate the income during their lives."

The principle enunciated in the last case cited was followed in Jones v. Harrison (C. C. A. 8) 7 F. (2d) 461. It was also enunciated in Leary v. Kerber, 255 Ill. 433, 99 N. E. 662, and Hartley v. Heirs of Wyatt, 281 Ill. 321, 117 N. E. 995, but in neither of the last two cases was there any issue directly present relative to an assignment or to the rights of creditors. In King v. King, 168 Ill. 273, 48 N. E. 582, the trust created was conceded to be a spendthrift trust, and under the provisions of the will the money to be paid to cestui did not become his property until actually paid to him.

We think the will in Hopkinson v. Swaim, supra, is quite analogous to the one in the instant case. In that case the income was to be paid directly to the cestui, free from the power and control of her husband and from liability for any of her debts or engagements. In the instant case the income was to be paid directly to respondent upon his order and receipt, free from liability for any of his debts or obligations.

Respondent insists that the controlling inducement in the Hopkinson Case was to protect the income from the husband, and that this fact distinguishes it from the instant case. We do not so regard it, and we think that construction is not a reasonable interpretation of the opinion of the Illinois Supreme Court, for it unquestionably stresses direct payment to the cestui as the controlling fact.

Respondent further insists that testator's use of the word "order" in the phrase "shall be paid to them directly upon their separate order and receipt therefor" should be construed to authorize alienation. We are convinced there is no merit in this contention.

We are aware that there are other courts which have never followed and do not now adhere to the Illinois rulings on the question now before us. Indeed, Mr. Kales, a former member of the Illinois bar, in his most excellent work on "Estates, Future Interests, and Illegal Conditions and Restraints in Illinois," c. 27, T. 6, is not in accord with the reasoning or the results of the Illinois cases on this subject, and he offers some very pertinent and constructive criticism. However, we are concerned only with the law as the Illinois courts have interpreted it, and whether that interpretation be right or wrong is beside the question.

It is quite obvious to us, under the Illinois decisions to which we have referred, that the trust created by the will in the instant case is a spendthrift trust, and that respondent had no right to alienate it.

The Board in its ruling relied upon Merchants' Loan & Trust Co. v. Patterson, supra (308 Ill. 519, 139 N. E. 912), but in that case there were no restrictions as to alienation or debts. The Board also relied upon its own decision in Marshall Field, 15 B. T. A. 718, but in that case the Illinois State Court had determined that there was no restriction as to alienation after Henry's death upon the property of which Henry formerly owned the equitable title; but that upon Henry's death, under the terms of the father's will, the property held in trust for the benefit of Henry went to Marshall unimpressed with any trust whatever.

Inasmuch as we hold that respondent had no power to alienate the property in controversy, it becomes unnecessary to decide whether the income attempted to be alienated is future income or a present interest in property.

The order of the Board is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.