The Northern Trust Company, Cosuccessor-Trustee Under Last Will and Testament of Lucy Storrs Ingals, Deceased, Plaintiff-Appellee, v. Mary Ingals House, Individually, and as Cotrustee Under Last Will and Testament of Lucy Storrs Ingals, Deceased et al., Defendants-Appellees. Lenna B. Harvey, Legatee Under Last Will and Testament of Francis E. Ingals, Deceased, Defendant-Appellant.

Gen. No. 46,354.

Opinion filed June 8, 1954. Released for publication June 29, 1954.

GEORGE S. STANSELL, of Chicago, for appellant; LESTER B. MARSHALL, of Chicago, of counsel.

J. W. BELLOWS, and PHILLIP ROTHENBERG, both of Chicago, for defendants-appellees.

DAVID A. CANEL, of Chicago, for plaintiff-appellee; LEONARD A. CANEL, of Chicago, of counsel.

MR. JUSTICE FRIEND delivered the opinion of the court.

The Northern Trust Company, cosuccessor-trustee under the last will and testament of Lucy Storrs Ingals, deceased, brought suit in equity to construe the will of Lucy Storrs Ingals, deceased, and particularly to determine whether defendant Lenna B. Harvey is entitled to share in the income and principal of a trust created under that will. The chancellor entered a decree adverse to that defendant, from which she took a direct appeal to the Supreme Court of Illinois. The cause was transferred here for decision, the court holding that there was no freehold involved.

Lucy Storrs Ingals died testate April 24, 1930. The first paragraph of her will provides for payment of her debts. The second, third and fourth paragraphs provide specific legacies. The fifth, sixth, seventh and eighth paragraphs, around which this controversy centers, provide as follows:

"Fifth: I give, devise and bequeath to my daughter, Mary Ingals House, and Frederick A. Brown, in Trust, the property known as 69–71 West Lake Street, Chicago, Illinois, to manage and hold the same until the death of the last survivor of my children, Francis E. Ingals, Melissa Rachel Ingals Fisher, Mary Ingals House and E. Fletcher Ingals, and to pay the net income thereof to my children in equal shares so long as they shall live.

"In case any of my said four children should die intestate and without issue, the surviving children shall receive said income, but in case any of my children should die leaving issue or testate the parent's share of said income shall be paid to said issue, or as provided by the will of said deceased child. Upon the death of my last surviving child, I direct that the heirs at law of said children shall receive absolutely said Lake Street property, if not sold prior to that time, per stirpes and not per capita, provided that any of my said children may by will direct the disposition of the share that would otherwise have gone to his or her heirs.

"In the event that the said Lake Street property shall be sold as hereinafter provided, then the proceeds therefrom shall be invested in interest bearing securities and held by my said Trustees in the same manner and under the same trusts as the said Lake Street property was held by said Trustees, and the net

12

income therefrom shall be paid and distributed and the corpus distributed, as the income from the corpus of said Lake Street property was held, paid and to be distributed.

"During the period of the trusteeship, leases may be made to extend even beyond the period of the trust.

"Sixth: In the event that my trustees shall deem it wise to sell said Lake Street property, authority is hereby given them so to do, and the purchaser shall not be required to look after the application of the purchase money. Without limiting the power hereby given to my said trustees, it is my desire that the property shall not be sold unless there is great danger of it being injured by circumstances or events that cannot now be foreseen.

"Seventh: I give, devise and bequeath all the rest, residue and remainder of my estate, of every kind, nature or description, and wheresoever situated, unto my daughter, Mary Ingals House, and Frederick A. Brown, In Trust, for the following purposes: They shall, upon the settlement of my estate, divide said property into four (4) equal parts and shall at once deliver to Francis E. Ingals his share, to Melissa Rachel Ingals Fisher, her share, but the shares of Mary Ingals House and of E. Fletcher Ingals shall not be paid to either of them until she or he arrives at the age of thirty-five (35) years, and until such time Mary Ingals House and E. Fletcher Ingals shall receive the net income from her or his share only. My said trustees are hereby given authority to dispose of any and all of said property before it is divided or the share set off to Mary Ingals House and E. Fletcher Ingals after it is divided, and invest the proceeds thereof in interest-bearing securities. Any purchaser

13

of any property under either trust shall not be required to look after the application of the purchase money.

"Eighth: In the event that any of my said four children shall die intestate and without issue, the number of parts into which any income, or my residuary estate is to be divided shall be correspondingly reduced. But in the event that any of my said children shall die testate or leaving issue, that child's share shall go to his or her issue or as provided in the will of said child."

Frederick A. Brown, one of the trustees, died in October 1939, and the Northern Trust Company became cosuccessor trustee. Thereafter the real property, constituting the corpus of the trust, was sold. Subsequent to the sale one of the four children of the testatrix, Francis E. Ingals, died testate, a resident of Connecticut. The pertinent portions of his will are as follows:

"First.

I direct my Executor hereinafter named to pay all my just debts and funeral expenses.

"Second.

I give and bequeath all of my fire alarm service to the Town of Guilford, Connecticut.

"Third.

All the rest, residue and remainder of my estate, both real, personal and mixed, and wheresoever located, I give, devise and bequeath to my friend, Lenna B. Harvey of New Haven, Connecticut.

"Fourth.

I am not leaving anything to my blood relatives, since they are well provided for. The reason I am leav-

14

ing the remainder of my estate to my friend, Lenna B. Harvey, is because of her kindness and care during my lifetime.

### "Fifth.

I hereby nominate and appoint the Guilford Trust Company, of Guilford, Connecticut, to be the Executor of this my last will and testament."

The dispute arises between Lenna B. Harvey and certain of the defendant appellees who contend, in substance, that the will of Lucy Storrs Ingals gives to each of her children, including Francis E. Ingals, only a life estate, with power to appoint by will both the income and a share of the principal; and that Francis E. Ingals did not, by his will, effectively exercise such power. Lenna B. Harvey, on the other hand, argues that the will of Lucy Storrs Ingals creates a life estate in her children, certain intermediate life estates, and remainders to the "heirs at law" of the respective children; that accordingly, under the rule in Shelley's case, Francis E. Ingals had, in addition to his life estate, a remainder in fee, subject only to the intervening life interests; and that this remainder in fee passed to Lenna B. Harvey under the will of Francis E. Ingals. As to the interest in the income of the trust, she contends that it was the testatrix' intention that if a child died leaving a will, the share of such child in the income of the trust should pass under the will and be distributed as part of the estate of the deceased child; and that the will of Francis E. Ingals was effective to pass to Lenna B. Harvey a one-fourth share of the income.

The questions thus presented for determination are: (1) whether either income or principal in the trust pass under the will of Francis E. Ingals, deceased; (2) whether, with reference to the principal, the rule in Shelley's case operates to give Francis E. Ingals a

15

remainder in fee; and (3) whether, with reference to income of the trust, the testatrix intended to create a technical power of appointment which required specific exercise, or whether she intended that such income should pass, under the will of any child who died testate, as part of the estate of such child.

The evidence adduced upon hearing, as to which there is no dispute, had to do with the active duties of the trustees in connection with the management of the real estate devised under the fifth paragraph of the will of Lucy Storrs Ingals. The duties devolving upon the trustees were active and not passive; they collected rents, paid taxes, made repairs on the building, were defendants in a condemnation suit brought by the City of Chicago to take part of the real estate for use by the city in connection with the creation of the subway system, distributed income, and eventually sold the real estate under the power granted them by the will; thereafter the trustees invested the proceeds derived from the sale in government securties, as provided by the will.

■ As the principal ground for reversal it is urged that Francis E. Ingals specifically exercised the power of disposition within the purview of Illinois law, as the result of which the one-fourth interest in the trust income received by him during his lifetime passed to Lenna B. Harvey by his will. It is conceded that in general a residuary clause is not effective to exercise a power of appointment (*Harvard College v. Balch,* 171 Ill. 275; *Emery v. Emery,* 325 Ill. 212), but defendant's counsel argue that if the donee of a power evinces an intention to exercise it, an effective appointment will be held to have been made, and that such intention need not be indicated by specific language but may be inferred from the language of the instrument, together with all surrounding facts and circumstances, citing *Funk v. Eggleston,* 92 Ill. 515, *Foster v. Grey,* 96 Ill.

16

App. 38, *Rettig v. Zander,* 364 Ill. 112, *Northern Trust Co. v. Cudahy,* 339 Ill. App. 603, and *Goff v. Pensenhafer,* 190 Ill. 200. Defendant introduced no evidence to show any facts, circumstances or intention on the part of Francis E. Ingals to specifically exercise the power of appointment given him under the will of Lucy Storrs Ingals; in fact, no part of the evidence heard by the chancellor is brought here for review.

The will of Francis E. Ingals merely gives "all the rest, residue and remainder" of his estate to his friend Lenna B. Harvey and does not on its face purport to exercise the power given to him by the will of Lucy Storrs Ingals, nor does it show on its face any facts or circumstances from which an intention to exercise the power given to him may be inferred. In order to exercise the power it must be clear and apparent from the will that it was the intention of Francis E. Ingals to exercise the power of appointment so that the transaction would not fairly be susceptible of any other interpretation.

We had occasion to consider and discuss this question at length in *Northern Trust Co. v. Cudahy,* where we pointed out that in *Emery v. Emery,* one of the decisions relied on by defendant in this proceeding, there were no surrounding circumstances, the only evidence offered being two wills which the court was called upon to construe. In that decision the court observed that "the will . . . did not on its face purport to exercise the power . . . . It was not necessary that it should do so. If he intended to act under the power and executed the will for the purpose of exercising the power his act constituted an appointment, but to have that effect a certain ascertainment of his intention to act under the power is essential. It is not necessary that the intention appear on the face of the instrument itself. It may be manifested in other ways but it must be apparent and clear, so that the transaction is not

17

fairly susceptible of any other interpretation. If it be doubtful under all the circumstances, then that doubt will prevent it from being deemed an execution of the power."

██ In the *Cudahy* case we likewise discussed *Funk v. Eggleston,* in some detail. The rule laid down in the *Funk* case has been followed and approved in subsequent Illinois decisions. It was there held that the fundamental principle deducible from all the English cases, which were discussed in that case, is that there should be a certain ascertainment of the intention of the donee of the power to act under it, and that the intention of the donee to work by the power will be given effect if the intention is made clear and manifest. The authorities cited by the respective counsel all have to do with the intention to effectively exercise a power of appointment. This may be done by an express provision in the will or by facts or by evidence of surrounding circumstances that are apparent and clear, so that the transaction is not fairly susceptible of any other interpretation. In the case at bar the will is silent as to any intention to exercise the power, and, as previously indicated, defendant introduced no evidence to show any facts, circumstances or intention on the part of Francis E. Ingals to specifically exercise the power of appointment.

██ As an additional ground for reversal it is urged that the rule in Shelley's case operates to give Francis E. Ingals a vested remainder in fee. The trust in this instance was an active one, giving the trustees powers which they exercised in many respects in accordance with the terms of the will, and they ultimately sold the property pursuant to the terms of the will. Under the authorities in this State, in an active trust in which the trustees hold possession, manage and lease the property, pay over the income, etc., the operation of the statute of uses is excluded, and

18

the trusts or uses remain mere equitable estates. *Burbach v. Burbach,* 217 Ill. 547; *Crow v. Crow,* 348 Ill. 241; *Hartley v. Heirs of Wyatt,* 281 Ill. 321.

The remaining contention is that the testatrix intended that the power of appointment should pass under the will of any child who died testate. However, it seems clear that it was never the intention of Lucy Storrs Ingals that the power of appointment should be exercised by the mere fact of the execution of a will by any one of her children because, if that were true, she would not have made provisions in her will that in the absence of a devise of a child's interest under the trust it should then go to the surviving children, or, finally, to the last survivor of the surviving children.

For the reasons indicated we have reached the conclusion that the decree of the superior court is correct, and it is therefore affirmed in all respects.

*Decree affirmed.*

NIEMEYER, P. J. and BURKE, J., concur.